# In the United States Court of Federal Claims

No. 13-345T

(E-Filed: May 3, 2022)

|  |  |
|---|---|
| MICHAEL ROSENHEIM, ) | |
| Plaintiff, ) | |
| v. ) | Motion for Summary Judgment; RCFC 56; Trust Fund Recovery Penalties; Responsible Person. |
| THE UNITED STATES, ) | |
| Defendant. ) | |

Derek W. Kaczmarek, Scottsdale, AZ, for plaintiff. Paul J. Vaporean, of counsel.

Steven M. Chasin, Attorney of Record, with whom were David A. Hubbert, Acting Assistant Attorney General, David I. Pincus, Chief, G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

     Plaintiff's motion for summary judgment, made pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), on both his claims and on defendant's counterclaim, is currently before the court. See ECF No. 114. Defendant responded to the motion, see ECF No. 123, and plaintiff replied, see ECF No. 124. The motion is now fully briefed, and ripe for decision.

     The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, plaintiff's motion for summary judgment is **DENIED**.

I.      Background

    A.      Federal Excise Tax on Air Transportation

Congress imposes a federal excise tax (FET) on the amount paid for the air transportation of people and cargo. See 26 U.S.C. §§ 4261 (people), 4271 (cargo). The customer is responsible for paying the tax and usually does so as part of the purchase price of the transportation. See id. §§ 4261, 4271, 4291 (requiring persons receiving payment for services to collect taxes). The air carrier then holds the funds in trust for the United States and pays them to the Internal Revenue Service (IRS) quarterly. See id. § 7501(a). If the funds are not paid to the IRS, the agency must assess Trust Fund Recovery Penalties (TFRPs) for one hundred percent of the unremitted tax on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed . . . who willfully fails to collect such tax." Id. § 6672(a); see also id. § 7501(b) (providing for penalties under 26 U.S.C. § 6672).

Sentient Jet Holdings, LLC[1] (Holdings) owned and operated several "airline-related subsidiaries" (together with Holdings, the Enterprise), which struggled during the 2007 to 2009 recession and declared bankruptcy in 2009. See ECF No. 114 at 13; see also ECF No. 123 at 11. During that time, two subsidiaries failed to pay the required FET. See ECF No. 114 at 14; see also ECF No. 123 at 11. The taxes owed eventually amounted to approximately $13 million, which were not paid prior to the Enterprise declaring bankruptcy. See ECF No. 123-1 at 228 (email to plaintiff stating the amount of FET owed). The IRS therefore assessed TFRPs against those it determined to be responsible persons, including plaintiff. See ECF No. 114 at 14; ECF No. 123 at 11.

Plaintiff appealed the IRS' initial determination and "exhausted his administrative remedies" in so doing. ECF No. 1 at 7. The IRS denied his appeal and "made assessments against [plaintiff]" for the TFRPs. Id. Plaintiff then paid "a portion" of the assessed TFRPs and filed a claim for a refund. See ECF No. 1 at 8-9. The IRS neither granted nor denied his refund claim within the required six months, and plaintiff filed suit in this court on May 20, 2013.[2] See id. at 10, 12. Defendant filed a counterclaim for the assessed amounts with its answer to plaintiff's complaint. See ECF No. 7 at 5-6.

---

[1]     Both parties note that the entity employing plaintiff changed names during plaintiff's tenure, and several of the subsidiaries have similar sounding names. The court will therefore follow the parties' lead and refer to plaintiff's employer as "Holdings" and to Holdings and its subsidiaries collectively as the "Enterprise." See ECF No. 114 at 13 & n.1; ECF No. 123 at 10 & n.1.

[2]     The court notes that, on April 16, 2014, plaintiff filed what was called on the docket an amended complaint. See ECF No. 14. The amended complaint, however, consists of only one sentence, stating that plaintiff was correcting a single date in his complaint—from 6/30/12 to

2

B.  Plaintiff's Role

Plaintiff served as the treasurer of Holdings from October 2007 to March 2009. See ECF No. 114 at 12-13; ECF No. 123 at 10.  Plaintiff's work as treasurer of Holdings included, according to the job description:

> Reporting to the Chief Financial Officer, the Treasurer will provide leadership in the design, development, and execution of treasury strategies related to capital structure and global financing requirements.  Additionally, this position will oversee Treasury aspects related to potential M&A transactions and strategic collaborations under consideration, and monitor the various strategic investments held by the Company.  The Treasurer will be responsible for the management of cash and investments, and foreign exchange exposure management. The Treasurer is a Director level position with significant interaction with the Finance leadership team and senior management across the Company.
>
> Specific duties will include, but not be limited to the following:
>
> - Debt Placement: Will maintain and expand the Company's debt facility with local and regional banks as company continues to grow.
>
> - Capital Structure/Corporate Finance: Active involvement in all capital market financing transactions including execution, reporting and on-going monitoring of capital structure; strong interface with financial institutions. Develop forecast for fully diluted shares outstanding and corresponding dilution management strategy. Coordination of rating agency reviews as required.
>
> - Project Financing: Develop financing strategy and recommendations related to large capital asset projects including real estate lease/buy and sale-lease-back decision support analysis.
>
> - Cash and Investment Management: In coordination with the Treasury Operations Manager, ensure optimal yield on short-term cash investments while satisfying global liquidity requirements.  Review

---

6/30/08—on a single page of his complaint. See id. at 1.  The court will, therefore, direct the clerk's office to modify the docket text of the amended complaint entry, ECF No. 14, to reflect that it is an erratum, rather than an amended complaint, and will consider the original complaint, ECF No. 1, as corrected by the erratum, to be the operative complaint.

> investment performance on 401K program offerings and periodically review asset allocation and associated returns on Foundation assets.
>
> - Investor relations: Will be the primary liaison with private investors through preparation and presentation of monthly financial reports with commentary on operating results.
>
> - Leveraged financing: Devise asset-backed financing deals for the purchase of capital equipment and real estate assets.
>
> - Risk management.
>
> - Strategic Investments: Provide support to the Business Development team in the review of collaboration agreements and potential M&A transactions; monitor portfolio of strategic equity investments.
>
> - Exposure Management: Develop strategies to manage foreign exchange and interest rate exposures as necessary. Assess impact of currency movements on operating plan.
>
> - Manage projects as directed by Chief Financial Officer.

ECF No. 123-1 at 96-97 (treasurer job description). According to plaintiff, he "served as a cash manager, not as a corporate treasurer." ECF No. 114 at 18. Defendant, however, disputes this characterization and states that plaintiff performed a treasurer's duties, see ECF No. 123 at 15, signed checks for the company, including one to the IRS for FET, see id. at 16, "was responsible for all the routine payment," which "extended to releasing wires, ACH payments, and payroll," id. at 19, and "had decision-making authority to pay creditors 'within guidelines,'" id. at 20.

Plaintiff asserts that he did not have:

- Supervisory authority over employees;
- Negotiating power with creditors or investors;
- Input or influence on restrictions of the use of funds imposed by investors or creditors;
- Routine check-signing power;
- Involvement in designing or developing capital structures, mergers, and acquisitions or with funding;
- Accounting, taxes, or payables functions;
- Responsibility for preparation of financial statements;
- The duty to handle or prepare tax matters; or
- The duty to determine or verify amounts owed, including for tax obligations.

See ECF No. 114 at 18-19. Defendant, however, contends that plaintiff had authority to make payments up to $10,000, see ECF No. 123 at 22, and made payment recommendations to the Holdings board committee that was responsible for determining which creditors were paid during the period prior to Holdings' bankruptcy, see id. at 21-24. According to defendant, plaintiff had "'independent authority to approve for payment any disbursements of $10,000(?) or less provide[d] standard internal controls have been followed.'" Id. at 34-35 (quoting ECF No. 123-1 at 180 (email from chief financial officer to plaintiff setting out plaintiff's duties in light of the board committee for payment)). Plaintiff responds that he neither "possessed [n]or exercised such authority," ECF No. 124 at 12, and that he "was at times the messenger for the [board committee], and that he monitored cash needs and availability in near real-time, so [the board committee] could make priority payment decisions," id. at 16.

Plaintiff has now filed a motion for summary judgment on both his claims and defendant's counterclaim arguing that he "was not a person . . . under a duty to collect, truthfully account for or pay over any tax," ECF No. 114 at 11, and therefore, he is "entitled to a refund of all amounts paid by and seized from him . . . [,] to abatement of all assessed TFRP, . . . [and] [d]efendant is not entitled to judgment on its counterclaim," id. at 51.

II.     Legal Standards

According to RCFC 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).

A genuine dispute of material fact is one that could "affect the outcome" of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." Dairyland Power, 16 F.3d at 1202 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. Celotex, 477 U.S. at 324.

The Supreme Court of the United States has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A nonmovant will not defeat a

motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." Id. at 249 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." Dairyland Power, 16 F.3d at 1202 (citing Celotex, 477 U.S. at 323).

III.	Analysis

    A.	The Imposition of TFRPs Requires a Fact-Specific Inquiry

The statute governing the imposition of individual liability for unpaid taxes reads, in relevant part, as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). "Person" is defined in the applicable section of the statute as "an officer or employee of a corporation . . . who as such officer[] [or] employee, . . . is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

The United States Court of Appeals for the Federal Circuit addressed this statute in the seminal case, Godfrey v. United States, 748 F.2d 1568 (Fed. Cir. 1984). There, the Federal Circuit determined that a person is subject to a penalty if the person is "under a duty to 'perform the act in respect of which the violation occurs,'" and that duty is to "'collect, truthfully account for, and pay over,'" the taxes. Id. at 1574. The Circuit assigned the shorthand term "responsible person" to describe such an individual. See id.; see also id. n.4 (noting that the term is "an invention of the courts"). Once a person is found to be a "responsible person" the statute also requires that the person have "'willfully' failed to collect, truthfully account for, and pa[id] over, or [to] have 'willfully' evaded or defeated the tax or tax payment." Id. at 1574. Plaintiff carries the burden of proving by a preponderance of the evidence that one of these elements is not met. See Noffke v. United States, 129 Fed. Cl. 341, 355 (2016); Jenkins v. United States, 101 Fed. Cl. 122, 131 (2011) (noting that plaintiff "ordinarily has the burden of proving, by a preponderance of the evidence, that at least one of the composite elements of liability under that section is absent").

"Both elements require a fact-specific inquiry by the court." Noffke, 129 Fed. Cl. at 355 (citing Waterhouse v. United States, 122 Fed. Cl. 276, 283 (2015)); see also

Godfrey, 748 F.2d at 1575; Gann v. United States, 121 Fed. Cl. 482, 488-89 (2015). The Federal Circuit stated that the "overwhelming weight of case precedent requires the factfinder to look through the 'mechanical functions of the various corporate officers,' to determine the persons having 'the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its . . . tax obligations.'" Godfrey, 748 F.2d at 1575 (citations omitted). "The mechanical duties of signing checks and preparing tax returns are thus not determinative of liability," id.; rather, "a person's 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds," id. at 1576. A "responsible person" is thus "generally understood to encompass all those officers who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation." Id.

"Willfulness must also be viewed in light of the 'personal fault' of the plaintiff." Id. at 1577. It requires "'proof of a voluntary, intentional, and conscious decision not to collect and remit taxes,'" rather than proof of intent to "'defraud or deprive'" the government of funds. Id. (quoting Scott v. United States, 354 F.2d 292, 295 (Ct. Cl. 1965)). "Willful conduct may also include a reckless disregard of an 'obvious and known risk' that taxes might not be remitted." Id. (quoting Feist v. United States, 607 F.2d 954, 961 (Ct. Cl. 1979)). "'Mere negligence in failing to ascertain facts regarding a tax delinquency,' however, 'is insufficient to constitute willfulness under the code.'" Id. (quoting Bauer v. United States, 543 F.2d 142, 150 (Ct. Cl. 1976)).

  B. The Parties Dispute the Extent of Plaintiff's Job Duties

The parties vigorously dispute whether plaintiff was both a responsible person and whether his actions were willful. See ECF No. 114 at 33-48 (responsible person discussion), 48-51 (willfulness discussion); ECF No. 123 at 29-39 (responsible person discussion), 39-43 (willfulness discussion). Specifically, the parties disagree about the extent of plaintiff's job duties and powers and whether those job duties included the duty or ability to pay the FET. See, e.g., ECF No. 114 at 34-35 (detailing plaintiff's job duties and his involvement with FET and concluding that plaintiff had neither the authority nor the power to make payment decisions, compel payment, or allocate funds); ECF No. 123 at 33-35 (detailing plaintiff's check signing authority and other job duties that "contradict [plaintiff's] assertion" that "he was just a 'cash manager'").

Plaintiff's position as to his job duties can be summarized in plaintiff's own words: "Plaintiff's Duties were limited and never included the authority to select which creditors would be paid, let alone prepare or file tax returns or calculate and pay tax liabilities." ECF No. 114 at 34. While defendant's position can be summarized in its words: "Not only does evidence show that Mr. Rosenheim 'could . . . by writing and mailing . . . a check, actually have transferred funds to the IRS in payment of the delinquent [trust fund] taxes'—he in fact did execute (as the sole signatory) a check to

7

the IRS for FET for nearly $10,000." ECF No. 123 at 33-34 (quoting Salzillo v. United States, 66 Fed. Cl. 23, 33 (2005)).

Specifically, plaintiff asserts that the Enterprise's "accounting, accounts payable and tax departments, directed by the Controller, were responsible for creating all payment documents for the Enterprise's creditors and those duties were segregated from [p]laintiff's [d]uties." ECF No. 114 at 34. Defendant, however, contends that plaintiff's position "was a typical treasurer position, not a mere 'cash manager.'" ECF No. 123 at 34. According to defendant, plaintiff "had decision-making authority 'within guidelines'" and had "'independent authority to approve for payment any disbursements of $10,000(?) or less provide[d] standard internal controls have been followed.'" Id. at 34-35 (quoting ECF No. 123-1 at 180 (email from chief financial officer to plaintiff setting out plaintiff's duties in light of the board committee for payment)). Plaintiff replies that defendant "points to no evidence that [p]laintiff possessed or exercised such authority," ECF No. 124 at 12, and that "any payment authority was theoretical, and, in any event, was subject to the same payment priority directives of the [board committee] and other internal controls," id. at 13.

Defendant further asserts that both the chief executive officer and chief financial officer "contradict[ed]" plaintiff's claim that he was "just a 'cash manager.'" ECF No. 123 at 35. Plaintiff replies that his position was "the norm" for a treasurer position in that he "was not responsible for determining which payables to pay." ECF No. 124 at 9. Rather, he "prepared financial forecasts of incoming and outgoing cash and provided cash level information." Id. According to plaintiff, his involvement in payables was limited to providing information about whether the Enterprise had the available cash to cover its payments and "serv[ing] as the intermediary between, on one side, [accounts payable] personnel responsible for paying bills or operational personnel receiving creditor demands for payment, and, on the other side, the [board committee]." Id.

Plaintiff goes on to contend that, while he did have authority to sign checks on "a few of [the Enterprise's] dozen or more accounts," he did so on an "exceedingly rare" basis and "only for payments that had been approved by accounting personnel." ECF No. 114 at 34. Plaintiff claims that "[t]he sparse evidence of [p]laintiff's involvement regarding issuing payments for [the] Enterprise's liabilities clearly establish[es] that his involvement was minimal, rare and not as a decision-maker." Id. Defendant, however, asserts that there exists "substantial evidence that [plaintiff] was given check signing duties specifically because it was integral to his role as Treasurer." ECF No. 123 at 34. According to defendant, plaintiff "was the sole signor on nearly a quarter million dollars in checks," and "executed or released numerous wire and electronic transfer and other payments." Id. Plaintiff replies that the number and amount of checks he signed "borders on irrelevant." ECF No. 124 at 11.

8

  C. Plaintiff's Job Duties Are a Material Fact that Must Be Established before the Court Can Grant Summary Judgment

Given the fact-specific inquiry necessary to determine whether plaintiff is a "responsible person," who "willfully" failed to collect and remit the FET, the extent of plaintiff's job duties is a material fact necessary to make the legal determination of responsibility and willfulness. See Godfrey, 748 F.2d at 1575; see also Anderson, 477 U.S. at 248 (stating that a genuine dispute of material fact is one that could "affect the outcome" of the litigation). In the court's view, the parties' disagreement about the scope of plaintiff's particular duties, specifically his duties as to payables' decision-making and his ability and duty to issue or sign checks, prevents the court from granting summary judgment.

Before the court can make a legal determination as to whether plaintiff was a responsible person and whether he willfully failed to pay over the FET, it must better understand the actual reach of plaintiff's job duties. Because "[t]he mechanical duties of signing checks and preparing tax returns are . . . not determinative of liability," id., and "a person's 'duty' under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds," id. at 1576, the court must make several determinations about plaintiff's duties, which the parties extensively dispute. First, the court must determine what the "guidelines" for plaintiff's ability to make payments included. ECF No. 123 at 34-35. Second, it must determine the breadth of plaintiff's power to advise and recommend a course of action to the board—specifically, whether the board merely rubber-stamped plaintiff's recommendations or whether he had little power to make any real suggestions for payment. This kind of inquiry—seeing through the "mechanical functions" of plaintiff's duties and into his "power to control the decision-making process"—is not possible on the conflicting evidence currently before the court. Godfrey, 748 F.2d at 1575 (citations omitted).

Because there remain material facts in dispute as to plaintiff's job duties and powers, the court must deny plaintiff's motion for summary judgment on his claims and defendant's counterclaim.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Plaintiff's motion for summary judgment, ECF No. 114, is **DENIED**;

(2) The clerk's office is directed to **REVISE** the docket text for ECF No. 14 to reflect that document's status as an **erratum** to the complaint, ECF No. 1; and

9

(3)       On or before **May 20, 2022**, the parties are directed to **CONFER** and **FILE** a **joint status report**. The status report shall indicate the parties' positions on alternative dispute resolution, whether further discovery is required in this case, or whether the parties would like to file further dispositive motions. The status report shall set forth a proposed schedule for those steps, if the parties find them appropriate. If neither settlement nor further dispositive motions is appropriate, the parties shall set forth a proposed schedule for the exchanges required by RCFC, Appendix A, ¶ 13 and the filings required by ¶¶ 14 through 17.

IT IS SO ORDERED.

                                        s/Patricia E. Campbell-Smith
                                        PATRICIA E. CAMPBELL-SMITH
                                        Judge